UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 20-cr-146 (SRN)

UNITED STATES OF AMERICA,

        Plaintiff,                  **PLEA AGREEMENT AND SENTENCING STIPULATIONS**

v.

FORNANDOUS CORTEZ HENDERSON,

        Defendant.

The United States of America and Fornandous Cortez Henderson (hereinafter, the "Defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the Defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** The Defendant voluntarily agrees to plead guilty to Count 1 of the Information, which charges the Defendant with Aiding and Abetting Arson of Property Used in or Affecting Interstate Commerce, in violation of 18 U.S.C. §§ 2 and 844(i). The United States agrees that it will not charge the Defendant with other crimes related to the conduct set forth herein.

2. **Factual Basis.** By pleading guilty, the Defendant admits the following facts are true and further admits that, were this matter to go to trial, the United States would prove these facts beyond a reasonable doubt:

    a.    At all relevant times, the Defendant was a resident of and resided in the State and District of Minnesota. The conduct described herein took place in the State and District of Minnesota.

1



b. On or about May 29, 2020, the Defendant and Garrett Patrick Ziegler (the "Co-defendant"), each aiding and abetting the other, intentionally and maliciously damaged, by means of fire and explosive materials, the Dakota County Western Service Center (the "WSC") located at 14955 Galaxie Avenue in Apple Valley, Minnesota.

c. The Defendant chose the WSC as a target because he had previously made court appearances at that building and because he and the Co-defendant were generally angry with law enforcement regarding the recent death of George Floyd.

d. To perpetrate the May 29, 2020 attack on the WSC, the Defendant, with assistance from the Co-defendant, constructed multiple Molotov cocktails, that is, containers filled with ignitable liquid—some of which also contained sharp objects, such as pushpins—and a wick.

e. In the early morning hours of May 29, 2020, the Defendant and the Co-defendant broke multiple windows at the WSC using baseball bats. With assistance and support from the Co-defendant, the Defendant then threw in multiple, lit Molotov cocktails. Some of these devices successfully ignited and caused fire damage to the WSC. The Defendant, along with the Co-defendant, also started and attempted to start other fires at the WSC by pouring ignitable liquids, and throwing unlit Molotov cocktails, in and around the broken windows, then attempting to start the fluids on fire.

f. Responding officers quickly extinguished the fires at the WSC. However, the Defendant's attack triggered the sprinkler system and inflicted significant fire and water damage to the WSC.

g. Previously, on or about May 27, 2020, the Defendant, aided and abetted by the Co-defendant, similarly attacked the WSC using a Molotov cocktail. The Defendant threw a single Molotov cocktail against the building, which ignited, but burned out without causing significant damage. The failure of this first attack was a motivating factor for the second attack on the WSC on or about May 29, 2020.

h. At the time of the fires, the WSC was used in interstate and foreign commerce. That is to say, the WSC housed agencies and organizations involved in business or trade taking place between

2

people or entities located in two or more states, and between people and entities in the United States and other countries. These agencies and organizations included, but were not limited to: the Dakota County District Court, including courtrooms, a clerk's office, and judges' chambers; facilities used for U.S. passport applications and processing; facilities used for voter registration and, on occasion, as a polling place during elections; the Dakota County Office of Planning; the Dakota County Office of Parks; the Dakota County Office of Public Health; and the Dakota County Transit and Transportation Offices.

3. **Waiver of Indictment.** The Defendant waives the right to be charged by Indictment. The Defendant agrees to sign a written waiver of this right at the change of plea hearing.

4. **Waiver of Pretrial Motions.** The Defendant understands and agrees that the Defendant has certain rights to file pre-trial motions in this case. As part of this Agreement, and based upon the concessions of the United States, the Defendant knowingly, willingly, and voluntarily gives up the right to file and litigate pre-trial motions in this case.

5. **Waiver of Constitutional Trial Rights.** The Defendant understands that he has the right to plead not guilty and go to trial. At trial, the Defendant would be presumed innocent, have the right to a jury trial or, in certain circumstances, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. By pleading guilty, the Defendant knowingly, willingly, and voluntarily waives each of these rights, except the right to counsel. The

3

Defendant understands that by pleading guilty, he is admitting his guilt, and, if the Court accepts the guilty plea, the Defendant will be adjudged guilty without a trial.

6. **Collateral Consequences.** The Defendant understands that as a result of his conviction, he could be assessed the costs of prosecution and experience additional consequences, such as the loss of the right to carry firearms, the right to vote, the right to hold public office, and the eligibility for federal benefits.

7. **Statutory Penalties.** The parties agree that Count 1 of the Information carries the following statutory penalties:

   a. a mandatory minimum of 5 years' imprisonment;

   b. a maximum of 20 years' imprisonment;

   c. a supervised release term of up to 3 years;

   d. a fine of up to $250,000;

   e. mandatory restitution; and

   f. a mandatory special assessment of $100.

8. **Guidelines Calculations.** The parties acknowledge that the Defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

   a. **Base Offense Level.** The parties agree that the base offense level is 24 because the offense involved the destruction or attempted destruction of a state or government facility. U.S.S.G. § 2K1.4(a)(1).

4

b.  **Chapter 3 Adjustments.** Other than acceptance of responsible, discussed below, the parties agree that no Chapter 3 Adjustments apply to this matter.

c.  **Acceptance of Responsibility.** The government agrees to recommend that the Defendant receive a 3-level reduction for acceptance of responsibility and to make any appropriate motions with the Court. However, the Defendant understands and agrees that this recommendation is conditioned upon the following: (i) the Defendant testifies truthfully during the change of plea and sentencing hearings, (ii) the Defendant provides complete and truthful information to the Probation Office in the pre-sentence investigation, and (iii) the Defendant commits no further acts inconsistent with acceptance of responsibility. U.S.S.G. § 3E1.1.

d.  **Criminal History Category.** The parties believe that, at the time of sentencing, the Defendant falls into criminal history category V. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. U.S.S.G. § 4A1.1. The Defendant's actual criminal history and related status (which could impact the Guidelines advisory range of imprisonment) will be determined by the Court based on the information contained in the Presentence Report and by the parties at the time of sentencing. If Defendant's criminal history category is something other than V this is <u>not</u> a basis for either party to withdraw from this Plea Agreement.

e.  **Guidelines Range.** If the adjusted offense level is 21, and the criminal history category is V, the Guidelines range is 70-87 months of imprisonment.

The Defendant acknowledges and understands that his crime of conviction, arson, carries a **five year (60 month) mandatory minimum sentence of imprisonment**. 18 U.S.C. § 844(i).

f.  **Fine Range.** If the adjusted offense level is 21, the fine range is $15,000 to $150,000. U.S.S.G. § 5E1.2(c)(3).

g.  **Supervised Release.** The Sentencing Guidelines require a term of supervised release of between one and three years for Count 1. U.S.S.G. § 5D1.2(a)(2).

5

9. **Sentencing Advocacy Agreements and Limitations.** When advocating to the Court regarding the Defendant's sentence, the parties agree as follows:

   a. Based on information known to the government at the entry of this Agreement, and assuming that between the time of this Agreement and sentencing the Defendant does not engage in any conduct inconsistent with his acceptance of responsible (as determined within the sole discretion of the United States), the United States agrees that it will not seek any upward departures or variances from the properly calculated Guidelines range of imprisonment.

   b. The Defendant agrees that he will not seek any downward departures or variances from the properly calculated Guidelines range of imprisonment.

   c. The parties reserve the right to advocate for, and present evidence related to, a sentence of imprisonment within the properly calculated Guidelines range, pursuant to the terms set forth herein.

   d. The parties jointly recommend that the Court impose a three year term of supervised release. They further recommend that a condition of the Defendant's supervised release be that he receive and participate in mental health counseling.

10. **Revocation of Supervised Release.** The Defendant understands that if he violates any condition of supervised release, he could be sentenced to an additional term of imprisonment up to the length of the original term of supervised release, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

11. **Discretion of the Court.** The foregoing stipulations and agreements are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination

regarding the applicable Guidelines factors and the Defendant's criminal history category. The Court may also depart and/or vary from the applicable Guidelines range. If the Court determines that the applicable Guidelines calculations or the Defendant's criminal history category are different from that stated above, the parties may not withdraw from this Agreement, and the Defendant will be sentenced pursuant to the Court's determinations.

12. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which he is convicted. U.S.S.G. § 5E1.3. The Defendant agrees to pay the special assessment, which is due and payable upon sentencing.

13. **Consent to VTC Change of Plea Hearing**. The Defendant understands his right, pursuant to Federal Rule of Criminal Procedure 11, to attend his plea hearing in court. However, due to public health considerations related to the COVID-19, the Defendant consents to his plea hearing being held via video-teleconference ("VTC"). The United States similarly consents to holding that hearing via VTC.

14. **Restitution**. The Defendant understands and agrees that 18 U.S.C. § 3663, and the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, apply to this case and that the Court is required to order the Defendant to make restitution to the victims of his crimes. There is presently no agreement as to the amount of restitution because the precise amount of restitution is unknown. However, at the time of entry of this Agreement, the parties anticipate that restitution will be in excess of $500,000.

7

The Defendant understands and agrees that the Court will order him to make restitution to any victim of his offense, regardless of whether the victim was named in the Information, the count of conviction, or this Agreement. The Defendant further agrees to pay restitution to his victims, in the amount determined by the Court and as ordered.

The Defendant represents that he will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the Defendant has any right, title, or interest. The Defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution and fines ordered by the Court. As part of this Agreement, the Defendant will complete, under penalty of perjury, a financial disclosure form—provided by the United States—listing all the Defendant's assets and financial interests valued at more than $1,000. The Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstance. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

15. **Forfeiture.** The Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of his violation of 18 U.S.C. §§ 2 and 844(i), and pursuant to 18 U.S.C. § 844(c) and 28 U.S.C. § 2461(c), any explosive

materials involved, or used, or intended to be used, in that violation. The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets, and to forfeit any additional directly forfeitable property.

16. **Waivers of Appeal and Collateral Attack.** The Defendant understands that 18 U.S.C. § 3742 affords him the right to appeal the sentence imposed in this case. Acknowledging this right, and in exchange for concessions made by the United States, the Defendant hereby waives all defenses and his right to appeal any non-jurisdictional issues, including his sentence, so long as the sentence he receives is not greater than 87 months of imprisonment. The Defendant further waives, to the full extent of the law, his right to appeal any assessment, forfeiture, or restitution order associated with his sentence.

The United States waives the right to appeal the Defendant's sentence, so long as that sentence includes 70 months or more of imprisonment.

The Defendant understands that he has the right to petition under 28 U.S.C. § 2255. Acknowledging this right, and in exchange for concessions made by the United States in this Agreement, the Defendant expressly waives the right to petition under 28 U.S.C. § 2255, except for a petition solely regarding ineffective assistance of counsel. The Defendant has discussed these rights with his attorney. The Defendant understands the rights being waived, and he waives these rights knowingly, intelligently, and voluntarily.

17. **FOIA Waiver.** The Defendant knowingly, willingly, and voluntarily waives all rights to obtain, directly or through others, information about the

9

investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

18. **Complete Agreement.** This, and any agreements signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the Defendant. Other than this Agreement, the Defendant acknowledges that no threats, promises, or representations have caused him to plead guilty. The Defendant has read this Agreement and carefully reviewed each provision with his attorney. The Defendant further acknowledges that he understands and voluntarily accepts each term and condition of this Agreement.

ERICA H. MacDONALD
United States Attorney

Date: 7/30/2020

_____
ALEXANDER D. CHIQUOINE
Assistant United States Attorney

Date: 07·28·2020

_____
FORNANDOUS C. HENDERSON
Defendant

Date: 7/28/2020

_____
PATRICK L. COTTER
Counsel for Fornandous C. Henderson

10