UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 20-cr-146 (SRN)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

FORNANDOUS CORTEZ HENDERSON,

        Defendant.

**POSITION OF UNITED STATES REGARDING SENTENCING**

The United States of America, by its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Assistant United States Attorneys Alexander D. Chiquoine and Chelsea A. Walcker, hereby submits its position regarding sentencing. The United States respectfully requests that the Defendant be sentenced to 80-months of imprisonment followed by three years of supervised release. This sentence justly punishes the Defendant for his serious crime of arson, deters the Defendant and other from committing future criminal acts, protects the public while providing the Defendant an opportunity for reformation, recognizes the Defendant's acceptance of responsibility, and avoids sentencing discrepancies, all without being greater than necessary to achieve these ends.

**I.  BACKGROUND**

    **A.  The Defendant's Upbringing and Struggles with Substance Abuse and Mental Health.**

The Defendant, Fornandous Cortez Henderson ("Mr. Henderson"), is 33 years old and was 32 years old at the time he committed the arson. (Presentence Investigation Report ("PSI") at F.2). He reports having a large and supportive extended family and a relatively stable childhood into his teenage years. (PSI at ¶¶

56–61). However, Mr. Henderson's life was upended in his teens by an abusive stepfather, an injury that truncated a budding sports career, and Hurricane Katrina. (*Id.* at ¶¶ 61–63). He moved to Minnesota in his late teens and attended high school briefly before dropping out, but ultimately earned his G.E.D. (*Id.* at ¶ 64). Mr. Henderson has three children who range in age from 2 to 13 years old. (*Id.* at ¶ 65).

Unfortunately, Mr. Henderson has struggled with substance abuse throughout his life. He has used marijuana habitually since he was only 10 years old and reports addictions to alcohol and pain killers. (*Id.* at ¶¶ 73–75).

Mr. Henderson's substance abuse appears tied, at least in part, to his untreated mental health issues. In July 2018, he was diagnosed with major depressive disorder, posttraumatic stress disorder, and cannabis dependence. (*Id.* at ¶ 70). He was admitted into a treatment program, but did not complete it. (*Id.*). Mr. Henderson also reports struggling with anger management and is currently prescribed medication for anxiety and depression. (*Id.* at ¶ 71).

Records indicate that in the five years before his instant arrest, Mr. Henderson was sporadically employed at various temporary positions. (*Id.* at ¶¶ 82–86). However, he was terminated from numerous jobs for failing to show up for work and received several complaints related to his attendance, inattentiveness on the job, and difficulties following instructions (including being aggressive and threatening). (*Id.* at ¶¶ 84–85).

**B.     The Defendant's Prior Criminal History.**

Mr. Henderson has an extensive and troubling criminal history. It is punctuated with violent offenses and numerous aggressive and dangerous

interactions with law enforcement. In total, Mr. Henderson has 15 criminal convictions, some that involve multiple charges, the vast majority of which occurred within seven years of the instant offense. (*Id.* at ¶¶ 37–51).

Notable in this unfortunate history are repeated instances of assaultive behavior followed by violent interactions with the police. At 23 years old, Mr. Henderson assaulted his roommate by strangling her and slamming her against the floor and wall, all for the "offense" of her posting a message on Facebook that he owed money for their utility bills. (*Id.* at ¶ 39). At 25 years old, he was convicted of felony obstruction after he fought numerous police officers who stopped him for drunk driving. (*Id.* at ¶ 34).

As time went on, Mr. Henderson's behavior and temper did not improve. In 2014, he was convicted of attempted second degree burglary after he threatened the mother of one of his children, attempted to forcibly enter her apartment by scaling the side of the building to her balcony, and was belligerent and uncooperative with police when they tried to stop him. (*Id.* at ¶ 45). Just two years later, Mr. Henderson was convicted of obstruction and trespass when he fought police who responded to a McDonald's where he was verbally abusing employees. (*Id.* at ¶ 46).

Less than a year before the instant offense, Mr. Henderson's criminal conduct continued to escalate. First, he was convicted of a misdemeanor assault after he became irate and punched two people when he could not find his cell phone. (*Id.* at ¶ 50). Second, just weeks later, police stopped Mr. Henderson because he was riding a bicycle erratically at 2:30am in dark clothing, with no lights, in a vehicle roadway. (*Id.* at ¶ 51). Mr. Henderson was immediately combative with the officers, refused

their commands, and attempted to flee. (*Id.*). He ultimately pleaded guilty to gross misdemeanor obstruction.[1] (*Id.*).

Notably, Mr. Henderson made court appearances and was convicted of many of these crimes at the Dakota County Courthouse located in Apple Valley, Minnesota. (*Id.* at ¶¶ 46, 49, 51). His unjustified anger with the Dakota County criminal justice system would later motivate him to attempt to burn that courthouse down.

### C. The Defendant's Instant Criminal Offense.

In late May of 2020, the Twin Cities metro area was racked with unrest following the death of George Floyd as he was arrested by the Minneapolis Police Department. (*Id.* at ¶ 8). Most of the protests were lawful expressions of understandable hurt, frustration, and anger. Unfortunately, some individuals used this tragedy, and the peaceful protests that followed, as cover to sow chaos and commit criminal acts like arson and looting. Mr. Henderson was one such individual.

In the early morning hours of May 29, 2020, Mr. Henderson and his co-defendant, Garrett Patrick Ziegler ("Mr. Ziegler"), attempted to burn down the Dakota County Western Service Center (the "DCWSC") located in Apple Valley, Minnesota.[2] (PSI at ¶ 7; Plea Agreement at ¶ 2(b) [Dkt. 32]). This building housed

---

[1] Despite his guilty plea, in October of 2020, the charges against Mr. Henderson were later dismissed. (PSI at ¶ 51). Presumably, because he was federally charged and convicted in the instant matter, the state deemed it an unwise allocation of resources to pursue sentencing.

[2] Mr. Henderson and Mr. Ziegler had in fact previously attacked the DCWSC with a Molotov cocktail, on May 27, 2020. (PSI at ¶ 9; Plea Agreement at ¶ 2(g)). This attack was not successful, a fact that motivated their subsequent attack on May 29, 2020. (*Id.*). Despite admitting this prior attack in the Plea agreement, Mr. Henderson now disputes that he was involved. (Plea Agreement at ¶ 2(g); PSI at A.1).

4

courtrooms, judges' chambers, and other state and local governmental agencies. (PSI at ¶¶ 9 n.2, 11; Plea Agreement at ¶ 2(h)). Mr. Henderson was motivated by his anger with the death of George Floyd, as well as his contempt for his past criminal convictions, many of which occurred at the DCWSC. (*See* PSI at ¶ 9; Plea Agreement at ¶ 2(b)).

Mr. Henderson and Mr. Ziegler used baseball bats to smash out windows at the DCWSC and threw in Molotov cocktails. (PSI at ¶ 10; Plea Agreement at ¶ 2(b), (d)-(e)). Several of these destructive devices ignited and caused fire damage to the offices where they landed. (PSI at ¶ 10; Plea Agreement at ¶ 2(e)). Mr. Henderson had further "armed" the Molotov cocktails with various sharp objects, such as pushpins and tacks, to thwart efforts at extinguishing the flames and cleaning up the damage by potentially hurting those who responded to the fire. (*See* PSI at ¶ 10; Plea Agreement at ¶ 2(d)). Not content with this degree of destruction, Mr. Henderson and Mr. Ziegler also poured ignitable liquids through and around several of the broken windows and lit them on fire. (PSI at ¶ 10; Plea Agreement at ¶ 14).

Fortunately, fire alarms at the DCWSC alerted the Apple Valley Police Department, which quickly responded and extinguished the flames. (PSI at ¶ 11; Plea Agreement at ¶ 2(f)). However, extensive fire, smoke, and water damage (from the sprinkler system, which was triggered by the attack) had already occurred. (*Id.*). Initial assessments estimated hundreds of thousands of dollars in damages. (PSI at ¶ 11; Plea Agreement at ¶ 14).

Apple Valley Police officers detained Mr. Henderson and Mr. Ziegler near the DCWSC shortly after their attack. (PSI at ¶ 12). When approached by the officers, Mr. Henderson fled, but was apprehended after a brief foot pursuit. (*Id.*).

**D.    The Defendant's Conduct While in Pretrial Detention.**

Mr. Henderson has been detained at the Sherburne County Jail since early June 2020. (PSI at ¶ 2). Unfortunately, his struggles with substance abuse, authority, and anger management continue. Since being detained, Mr. Henderson has incurred several disciplinary infractions, including: (1) hoarding medication; (2) crushing and snorting medication; (3) refusing to comply with commands and resisting placement; and (4) threatening bodily harm, using abusive language, and engaging in harassment. (*Id.*).

**E.    Procedural History, Plea Agreement, and Sentencing Guidelines Calculation.**

Mr. Henderson was federally arrested on June 2, 2020 via a criminal complaint charging him with aiding and abetting arson and possession of a destructive device. (*See US v. Henderson,* 20-mj-343(2) (BRT)). After he agreed to plead guilty, on July 22, 2020, the United States filed an Information charging Mr. Henderson with one count of aiding and abetting arson in violation of 18 U.S.C. §§ 2 and 844(i). (PSI at ¶ 2). On August 26, 2020, Mr. Henderson pleaded guilty to this charge. (*Id.*).

In the Plea Agreement, the parties calculated Mr. Henderson's Guidelines as follows: an adjusted total offense level of 21, a criminal history category of V, and a resulting advisory range of imprisonment of 70–87 months. (Plea Agreement at ¶ 8(e)). The PSI concurs with the parties' Guidelines calculation. (PSI at ¶ 92).

Notably, Mr. Henderson's crime of conviction carries a statutory mandatory minimum sentence of five years' (60 months') imprisonment. (PSI at ¶ 91; Plea Agreement at ¶¶ 7(a), 8(e)).

Assuming Mr. Henderson does not engage in any conduct inconsistent with acceptance, the Government will not move for an upward departure or variance from the Guidelines range. (Plea Agreement at ¶ 9(a)). Mr. Henderson agrees that he will not seek a downward departure or variance from the Guidelines range. (*Id.* at ¶ 9(b)). The parties jointly recommend that Mr. Henderson's sentence include three years of supervised release with a requirement that he participate in mental health counseling during that time. (*Id.* at ¶ 9(d)).

Mr. Henderson also agreed to pay restitution, which is mandatory, in the full amount of any claim. (*Id.* at ¶ 14). Restitution claims are still being gathered, but currently total $164,299.70. (PSI at ¶ 16). Mr. Henderson is jointly and severally liable for restitution with Mr. Ziegler. (*Id.* at ¶ 17).

Mr. Henderson waives his appeal rights so long as the sentence he receives is not greater than 87 months. (Plea Agreement at ¶ 16). Similarly, the Government waives its appeal rights so long as the sentence he receives is not less than 70 months. (*Id.*). Mr. Henderson also waives his rights under 28 U.S.C. § 2255, except with regards to a claim of ineffective assistance of counsel. (*Id.*).

II.     **ARGUMENT**

In keeping with the Plea Agreement and the Guidelines' advisory sentence, the Government respectfully requests that the Court sentence Mr. Henderson to 80 months of imprisonment followed by three years of supervised release. This sentence

strikes the right balance, accounts for the considerations set forth in 18 U.S.C. § 3553(a), and is not greater than necessary.

    **A.    Accounting for the Defendant's history and characteristics, the seriousness of his crime, the need to provide just punishment, and protecting the public.**

A sentence of 80-months of imprisonment with three years of supervised release to follow accounts for the history and characteristics of Mr. Henderson, acknowledges the seriousness of his offense, provides just punishment for his crime, and protects the public. *See* 18 U.S.C. §§ 3553(a)(1), 3553(a)(2)(A), 3553(a)(2)(C). Mr. Henderson's crime was undoubtedly serious, and he committed it knowingly and intentionally. He did not express his anger with the criminal justice system and the death of George Floyd through peaceful protest. Instead, Mr. Henderson planned and executed a violent attack against an institution (embodied by the DCWSC) whose only "offense" was convicting him of the serious crimes he admitted (through his guilty pleas) committing.

Mr. Henderson structured his attack to cause maximum damage by smashing numerous windows with a baseball bat, hurling in multiple Molotov cocktails, filling those devices with sharp objects to thwart and/or injure those who responded, and lighting other fires. His efforts were successful, causing hundreds of thousands of dollars in damage. Moreover, Mr. Henderson's attack disrupted the important business of the DCWSC and caused emotional pain to several individuals whose

offices, and the personal effects they kept therein, were destroyed.[3] (PSI at ¶ 18). A significant term of incarceration is necessary to punish this serious crime.

Moreover, Mr. Henderson's criminal history counsels a substantial sentence of imprisonment. Throughout his adult life, Mr. Henderson has committed a litany of crimes, many of which involved threats, violence, and other dangerous behavior. Many of his crimes (along with his numerous probation violations and recent conduct while detained at the Sherburne County Jail) evidence an inability to accept authority and follow basic rules/laws, and an unwillingness to treat others with respect. This criminal history, especially combined with the serious instant offense, establishes Mr. Henderson as a threat to society. Thus, a long period of incarceration is necessary to protect the public.

However, there are also mitigating factors to consider. First, Mr. Henderson's struggles with mental health and substance abuse are apparent. Although his mental illness and addictions do not excuse his criminal conduct, they undoubtedly contributed to his poor choices and callousness towards others. Second, Mr. Henderson's teenage years were difficult, punctuated by the sudden death of his grandfather (who raised Mr. Henderson), an abusive stepfather, an unfortunate injury that derailed a promising sports career, and geographic displacement caused by Hurricane Katrina. Again, these struggles in no way excuse Mr. Henderson's

---

[3] Although Mr. Henderson's attack was executed in the early morning hours, when it was less likely that the DCWSC was occupied, this did not mean it was impossible, or even unlikely, that anyone would be inside. As one victim noted, court reporters and other court staff often work late into the night at the DCWSC. (PSI at ¶ 18). It is thus a matter of luck that Mr. Henderson's attack did not injure or even kill someone.

criminal conduct—many other individuals have faced even greater obstacles and not resorted to a life of violent crime—but they do contextualize his behavior.

To balance these competing considerations, the Government proposes a sentence of 80 months, which is in the middle of Mr. Henderson's Guidelines range. A three-year term of supervised release to follow will provide additional protection to the public, while also giving Mr. Henderson structure and accountability that will support his reformation.

### B.   Deterring crime and promoting respect for the law.

The Government's proposed sentence will deter Mr. Henderson, and others, from committing crimes in the future and promote respect for the law. *See* 18 U.S.C. §§ 3553(a)(2)(A), 3553(a)(2)(B).  Although his criminal history is lengthy, Mr. Henderson's prior sentences were short and he spent relatively little time in prison. These sentences did not deter him and in fact, his disrespect for the law and well-being of others has only increased with time.  A substantial sentence of incarceration is necessary to deter Mr. Henderson, and others like him,[4] from future criminality. The United States Sentencing Commission recently found that defendants who

---

[4] Deterring others from committing similar crimes is an especially important objective here.  Civil discourse and unrest have increased in recent years, making the distinction between lawful protest and criminality important to emphasize.  The freedom to peacefully assemble and speak-out against perceived injustices are bedrock rights that are integral to our democracy.  However, when individuals like Mr. Henderson engage in wanton criminality ostensibly in the name of the same issues being debated/protested, it only serves to undermine the legitimate, peaceful exercise of these important rights by others.  Therefore, deterring the sort of criminality Mr. Henderson engaged in is particularly important.

10

received a sentence of 60 months or more were 17% less likely to reoffend, compared to those who received lesser sentences.[5]

### C. Avoiding unwarranted sentencing disparities.

Mr. Henderson's accomplice, Mr. Ziegler, will also plead guilty to one count of aiding and abetting arson. (*See US v. Ziegler*, 20-cr-188 (SRN)). In contrast to Mr. Henderson, Mr. Ziegler has no criminal history. And while Mr. Ziegler was very much involved in the execution of the arson attack on the DCWSC, it was Mr. Henderson who selected it as the target in addition to participating in the attack. By operation of the statutory mandatory minimum, Mr. Ziegler will receive a sentence of at least 60 months. To ensure no unwarranted discrepancies between the sentences for Mr. Henderson and Mr. Ziegler, and to account for their respective culpability, a sentence within Mr. Henderson's Guidelines range is necessary. The Government's proposed sentence of 80 months, in the middle of that range, accomplishes these ends without unduly punishing Mr. Henderson.

### D. Providing the Defendant with an opportunity for reformation and acknowledging his acceptance of responsibility.

A considerable term of incarceration is necessary to provide Mr. Henderson with needed treatment and an opportunity to reform himself. *See* 18 U.S.C. § 3553(a)(2)(D). However, a sentence in the middle of his Guidelines range accomplishes this end, while also acknowledging his acceptance of responsibility.

---

[5] *Length of Incarceration and Recidivism*, United States Sentencing Commission, at 4 (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200429_Recidivism-SentLength.pdf (last visited 11/20/2020).

Mr. Henderson is clearly in need of mental health and substance abuse treatment. His struggles with these issues have negatively shaped his life for many years. While incarcerated, and later while on supervised release, Mr. Henderson will have an opportunity to engage with this needed treatment. There is reason to hope and believe he will be successful—Mr. Henderson is interested in receiving mental health treatment and substance abuse counseling during his incarceration. (PSI at ¶¶ 71, 76). However, these issues have festered for many years and cannot be meaningfully addressed quickly. A term of incarceration within the Guidelines range will ensure that while in the carefully monitored environment of a prison, Mr. Henderson can access needed programming and treatment for a prolonged period.[6]

Mr. Henderson should also receive a sentence that credits his acceptance of responsibility. As the Court is aware, not all acceptance is created equal. Many defendants "accept responsibility" only after filing numerous (and often frivolous) motions that waste executive and judicial time, or equivocate and minimize their involvement until the very end, yet they still receive full "credit" in the form of a two- or three-level reduction to their offense level. By-in-large, Mr. Henderson did not do this. When arrested federally—and after having an opportunity to review the evidence against him—Mr. Henderson agreed to plead guilty to an information, thereby saving the Government and the Court considerable resources. In his

---

[6] Such a sentence will also provide Mr. Henderson the chance to pursue educational certifications and vocational training, which he is interested in so that he can start a business upon release. (PSI at ¶¶ 21, 80).

12

statement of acceptance, Mr. Henderson did not minimize his conduct/involvement,[7] expressed remorse, acknowledged the harm done to himself, his family, and his community, and evidenced a plan to be successful and law-abiding in the future. A sentence in the middle, and not the top, of Mr. Henderson's Guidelines range appropriately credits his acceptance of responsibility.

### E. Restitution.

Mr. Henderson has agreed to pay restitution, which is mandatory in this case. (Plea Agreement at ¶ 14). Restitution claims received thus far total $164,299.70. (PSI at ¶ 16). However, the Government anticipates receiving, and is actively working to gather, additional claims. The Government anticipates having an exact restitution amount, broken out by victim/payee and with supporting documentation, by the time of sentencing for Mr. Henderson's co-defendant, Mr. Ziegler. The Government respectfully proposes that the Court hold open restitution in Mr. Henderson's case until Mr. Ziegler is sentenced, at which time the Government will move that restitution be set in the same amount, with joint and several liability, for Mr. Henderson.

---

[7] After initially admitting that he attempted an unsuccessful arson against the DCWSC on May 27, 2020, Mr. Henderson now denies that conduct. (Plea Agreement at ¶ 2(g); PSI at A.1). This is an unfortunate, but relatively minor, regression in his acceptance of responsibility. It should not impact his Guidelines adjustment for acceptance of responsibility, or his Guidelines calculation generally. Had Mr. Henderson persisted in fully accepting responsibility, the Government may have advocated for a slightly lower sentence, but still one within the Guidelines range.

## III. CONCLUSION

The Government respectfully requests that the Court impose a sentence of 80-months' imprisonment with three years of supervised release to follow.  This sentence strikes the right balance.  Mr. Henderson's crime, maliciously attempting to destroy a courthouse during a period of societal unrest (and causing hundreds of thousands of dollars in damage), is incredibly serious.  It represents just the latest offense in Mr. Henderson's long and often violent criminal history, making him a danger to the public.  However, this is not to say that Mr. Henderson is beyond hope, or that there are no mitigating factors to consider.  Mr. Henderson's life as a teenager and young adult were difficult.  Moreover, his struggles with substance abuse and mental health played a part in his criminality.  Mr. Henderson wants to reform himself, which is commendable, but that process will take time.  Thus, to protect the public and justly punish his serious offense, while also providing Mr. Henderson with an opportunity for reformation, a significant term of incarceration is appropriate and necessary.

Dated: November 25, 2020              Respectfully submitted,

                                      ERICA H. MacDONALD
                                      United States Attorney

                                      */s/ Alexander D. Chiquoine*

                                  BY: ALEXANDER D. CHIQUOINE
                                      Assistant U.S. Attorney
                                      Attorney ID No. 0396420MN
                                      Chelsea A. Walcker
                                      Assistant U.S. Attorney
                                      Attorney ID No. 0396792MN