UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-CR-00146 (SRN)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Fornandous Cortez Henderson, )<br>)<br>Defendant. ) | **DEFENDANT'S POSITION REGARDING SENTENCING** |

The Defendant, by and through his attorney, Patrick L. Cotter, and pursuant to U.S.S.G. § 6A1.2, and Local Rule 83.10, respectfully submits the following position regarding sentencing in this matter.

## INTRODUCTION

The Defendant, Mr. Henderson, will soon come before this Court for sentencing following his guilty plea to *Aiding and Abetting Arson of Property Used in or Affecting Interstate Commerce*, in violation of 18 U.S.C. §§ 844(i) and 2. Mr. Henderson's plea agreement contemplates a total offense level of 21 and a Criminal History Category V carrying a guideline range of 70-87 months imprisonment. The Presentence Investigation Report ("PSR") calculates the same guidelines recommendation. *See* (PSR at ¶ 92).

After careful consideration of all of the 18 U.S.C. § 3553(a) factors, to include Mr. Henderson's offense conduct and individual characteristics, a 70-month sentence is sufficient, but not greater than necessary to accomplish the goals of sentencing.

Specifically, Mr. Henderson's history, his acceptance of responsibility, the nature and circumstances of the offense and his desire for rehabilitation warrant a 70-month sentence.

**FACTUAL BACKGROUND**

Mr. Henderson was born and raised in the small town of Belzoni, located in the Mississippi Delta.



His mother, Gwindle Ann Aryeetey, was only 14-years old when she gave birth to Mr. Henderson. He was the oldest of her seven children. His mother tried to protect Mr. Henderson from his father because she believed that he was a drug dealer in Illinois. Due to his mother being but a mere child herself when she had him, Mr. Henderson was raised

primarily by his grandparents during his early years. He had a close relationship with his grandfather and will never forget witnessing his sudden death due to a heart attack. This was one of the many traumatic life events for Mr. Henderson and one that he will never forget.

Growing up in the small town of Belzoni, Mississippi was challenging for Mr. Henderson, as an African American male. The town was still largely segregated, and he remembers enduring many instances of racism throughout his upbringing. In addition to the racism, Mr. Henderson also endured verbal and physical abuse by her mother's husband, which was often brought on by his alcoholism and accompanied by violent abuse towards his mother. Because of this, Mr. Henderson was forced to take on many responsibilities to care for his younger siblings. Mr. Henderson's mother was able to escape the abusive relationship and relocate to Minnesota when he was 16-years old. Mr. Henderson was left in Mississippi to finish high school.

Through all of this, Mr. Henderson was always a good student and enjoyed school. He was also involved in track and field with a scholarship offer to attend Louisiana State University. Unfortunately, a devastating ankle injury prevented him from ever returning to competition. As if matters could not get worse for Mr. Henderson, Hurricane Katrina struck Belzoni, Mississippi in 2005 causing damage so extensive that he was unable to complete his senior year of high school.



With nowhere to turn Mr. Henderson moved to Minnesota to live with his mother. He immediately enrolled at Burnsville High School for his senior year. The diversity of Minnesota schools was shocking to Mr. Henderson who was used to African American only school in Mississippi. He soon found that he did not really fit in with any crowds. Eventually, Mr. Henderson left school to start working, but was able to later complete his GED.

Mr. Henderson's youth was marred with a number of other traumatic events. He experienced three close childhood friends in Mississippi who were kidnapped, sexually assaulted, and murdered, and he has been shot twice himself. As a result of his childhood trauma, Mr. Henderson was diagnosed with major depressive disorder, posttraumatic stress disorder and cannabis dependence.

4



He is currently prescribed several medications for his anxiety and depression. Mr. Henderson has never received suffcient treatment to address his mental health issues, but he is ready and willing to do so, while serving his term of imprisonment.

To address his mental health issues, Mr. Henderson turned to self-medication. As mentioned above, Mr. Henderson has suffered from marijuana (cannabis) dependence since at least 2018. Additionally, he has suffered an addiction to pain medication (promethazine-codeine) since his ankle injury in 2004. Mr. Henderson is interested in seeking chemical dependency treatment during his impending term of imprisonment.

Mr. Henderson is a father of three children and tries to provide for them anyway that he can. Even through his tumultuous childhood, he was able to graduate high school, and attain an associate of applied science degree in business administration. He is driven to open his own barbershop and/or tattoo shop after his term of imprisonment.

## ARGUMENT

**I.   A 70-MONTH SENTENCE IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO ADDRESS THE DEFENDANT'S CONDUCT.**

The Supreme Court has instructed the sentencing court to consider the 18 U.S.C. § 3553(a) factors, in addition to the sentencing guidelines, in formulating its sentencing

5

decisions to fit the specific circumstances of each defendant. *See Gall v. U.S.*, 552 U.S. 38, 49–50 (2007). These factors include the nature of the offense, the history of the defendant, the need for adequate deterrence, and the protection of the public. 18 U.S.C. § 3553(a). "[A] sentencing court has wide latitude to weigh the § 3553(a) factors and assign some factors greater weight than others in determining an appropriate sentence." *U.S. v. David*, 682 F.3d 1074, 1077 (8th Cir. 2012).

Although "a court of appeals may apply a presumption of reasonableness when conducting substantive review of a sentence within the advisory range, 'the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.'" *U.S. v. Henson,* 550 F.3d 739, 740 (8th Cir. 2008) (quoting *Rita v. U.S.*, 551 U.S. 338, 351 (2007). The Supreme Court has emphasized this point, noting "[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," and that "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. U.S.,* 555 U.S. 350 (2009) (*per curiam*) (emphasis in the original).

As the Eighth Circuit Court of Appeals has also explained, "[w]e may not require extraordinary circumstances to justify a sentence outside the Guidelines." *U.S. v. Feemster*, 572 F.3d 455, 462 (8th Cir. 2009) (*en banc*) (quoting *Gall,* 552 U.S. at 47). Instead, the district court,

> must make an individualized assessment based on the facts presented. If the court concludes that a sentence outside of the Guidelines range is warranted, then it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. [A] major departure should be supported by a more significant justification

than a minor one. After the district court determines the appropriate sentence, it must then adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Feemster*, 572 F.3d at 461.

Mr. Henderson's history, his acceptance of responsibility, and his desire for rehabilitation dictate that a 70-month sentence is sufficient but not greater than necessary to accomplish all the sentencing goals.

### A. Mr. Henderson's History and Acceptance of Responsibility.

Mr. Henderson grew up in a broken home, in a small segregated town in Mississippi. The support system that he did have at an early age with his grandparents ended with the tragic and traumatic sudden death of his grandfather. From that point forward, Mr. Henderson was forced to grow up quickly for his younger siblings. Mr. Henderson's mother, Ms. Aryeetey, states it well in her letter of support:

> Fornandous is the oldest of 7 siblings, he is my firstborn son at the gentle age of 15. I was a baby having a baby. Fornandous was a very good boy growing up and very smart too. He caught on to things quickly, being raised in a single parent household with little to no engagement, acceptance, or support from his biological father.

(Ex. 1, Gwindle Ann Aryeetey Letter of Support).

Mr. Henderson's youth was traumatic. He experienced both physical and verbal abuse from his step-father. Childhood trauma and instability affects us from within the deepest part of our psyche. Mr. Henderson's struggles did not come without a cost, particularly to his mental health. He struggles with significant anxiety and depressive disorders. This led directly to his attempts at self-medication leading to his current

7

chemical dependency issues.  Mr. Henderson's mental health and chemical dependency issues undoubtedly played a role in his poor decision to commit this offense.



(Figure 1: Developmental Traumatology Model of the Biological Effects of Trauma)[1]

Through all of his struggles, Mr. Henderson was able to persevere and do several good things in his life.  He stuck with his schooling and was able to get his high school diploma.  From there he was also able to attain an associate degree in business administration.  He maintains the ambition to start his own business after serving his impending term of imprisonment.

---

[1] De Bellis, Michael D, and Abigail Zisk. "The biological effects of childhood trauma." *Child and adolescent psychiatric clinics of North America* vol. 23,2 (2014): 185-222, vii. doi:10.1016/j.chc.2014.01.002. "The Biological Effects of Childhood Trauma" (nih.gov)

Finally, and most importantly, Mr. Henderson immediately recognized his wrongdoing and took responsibility for his actions. He deeply regrets his role in the commission of this offense. Mr. Henderson fully accepts this Court's sentencing decision.

### B.     The Nature and Circumstances of the Offense.

Mr. Henderson committed this offense at a time of intense racial injustice and tension particularly in Minnesota, but also throughout the United States. This is an issue that he has been dealing with and trying to overcome his entire life from the small town in Mississippi all the way to his high school years in Minnesota. Mr. Henderson got caught up in the moment and made a terrible decision – one that he deeply regrets. He takes full responsibility for his actions. While a term of imprisonment is both warranted and required by law, that term need not be greater than 70 months to address deterrence. It has become apparent that we in the United States are incarcerating our citizens for periods of time that are disproportionate to common sense.

### C.     Mr. Henderson Desires Mental Health and Chemical Dependency Treatment.

There can be little doubt that Mr. Henderson's mental health and chemical dependency issues played a role in his decision to commit the instant offense. Mr. Henderson does not use this as an excuse for his actions. Rather, he seeks the Court's understanding that he wants to address these issues and can return to being a productive member of his community upon his release from imprisonment. A 70-month sentence provides Mr. Henderson with ample opportunity to fully treat his mental health and

chemical dependency issues in prison. Mr. Henderson looks forward to the chance to address his issues.

## **CONCLUSION**

For the foregoing reasons, a sentence to 70-months imprisonment is sufficient, but not greater than necessary to accomplish the goals of sentencing.

Respectfully submitted,

Dated:   November 25, 2020             *s/Patrick L. Cotter*
                                                              Patrick L. Cotter
                                                              Attorney No. 0319120
                                                             Attorney for Defendant
                                                             105 Hardman Court, Suite 110
                                                             South St. Paul, MN 55075
                                                             Phone: 651-455-1555
                                                             Fax: 651-455-9055
                                                             patrick@siebencotterlaw.com